## Branham v. Commonwealth.

(Decided February 21, 1928.)

## Appeal from Pike Circuit Court.

1. Criminal Law.—Verdict at last depends on credibility of witnesses, which is peculiarly and exclusively question for jury.

2. Criminal Law.—Appellate court will not disturb verdict of properly instructed jury, unless it is so flagrantly and palpably against evidence as to shock conscience and lead unerringly to conclusion that it was result, not of deliberation, but of passion and prejudice.

3. Rape.—In prosecution of stepfather for rape of stepdaughter, evidence held sufficient to sustain conviction.

4. Criminal Law.—In prosecution for rape of stepdaughter, questions asked prosecutrix as to whether she told mother about what happened and whether delay in having stepfather arrested was caused by fear, to which prosecutrix answered she did not know, objection being sustained by court, held not prejudicial to defendant.

5. Criminal Law.—In prosecution for rape of stepdaughter, question asked defendant on cross-examination as to how much he had whipped prosecutrix, objection being sustained, held not prejudicial to defendant.

6. Witnesses.—In prosecution for rape of stepdaughter, cross-examination of accused as to what time prosecutrix and sister went home, where he had testified to one time and stepdaughters to another, held proper.

7. Criminal Law.—In prosecution for rape cross-examination of defense witness as to whether she was not girl of easy virtue, to

which objection was sustained although witness answered in affirmative, held not prejudicial to defendant.

8. Criminal Law.—Cross-examination of defense witness in rape prosecution as to her truth and veracity and general reputation for virtue, to which objection was sustained, held not to prejudice accused.

9. Criminal Law.—Where counsel for accused in brief made reference to facial expressions, manner, and hearing of prosecuting attorney, which were not shown by record, held, that appellate court cannot venture beyond fair import of written record, but such matters must be dealt with in first instance by trial court.

DAUGHERTY & BARRETT for appellant.

JAMES W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Willie Branham was convicted in the Pike circuit court of the crime of rape committed upon his step-daughter, and his sentence fixed at 12 years and 6 months in the state penitentiary. He has prosecuted this appeal to review the rulings of the trial court.

It is urged that the verdict is flagrantly against the evidence, and that the conduct of the commonwealth's attorney on the trial was improper and prejudicial to appellant's substantial rights. In order to dispose of these questions, it is necessary to make a brief statement of the facts.

The appellant, when about 20 years of age, married a widow somewhat older, with four children, two of whom were girls named Goldie and Thelma Bartley. Appellant's wife appears to have been an invalid at the time of the events mentioned in this record, and died shortly thereafter and before the trial.

Goldie Bartley testified that she was about 10 or 11 years of age when her mother married the appellant, and that she was 19 years old in August, 1926, when the crime against her was said to have been committed. On the morning of that date she and her sister, Thelma Bartley, went with their stepfather at his request to the woods, about one-half mile from home, to help him cut a hickory tree, peel it, and saw it into axe handle lengths. He took along a shot gun and pistol. They remained in the woods until about 3 o'clock in the afternoon. She says the crime for which appellant was convicted was committed by him while they were in the woods. She stated that

appellant told her if she cried for help, he would kill her. On the same occasion he attempted to commit the same offense on her younger sister, but was unable to accomplish his purpose. She testified that she did once cry for help to Clevinger and Green who were working in the woods about one-fourth of a mile away. Three or four days after the occurrence, she obtained a warrant for the arrest of her stepfather upon this charge. Thelma Bartley testified substantially to the same facts as related by her sister. Some three months afterwards Goldie Bartley had a miscarriage and was sent to the hospital. Clevinger testified that on the date mentioned he was working in the woods about one-fourth of a mile from the scene of the occurrence complained of, and that he heard children or women folks hallooing, but he could not make out what they wanted. He also heard chopping and a tree fall. Green testified that he was with Clevinger and heard some talking in the woods, but did not recognize it as a call for help.

The defendant testified that he took the girls with him on the occasion in question to help him, as it was customary for the girls to help him in the work on and about the place. He stated that the two girls had left home on several occasions and that he had reprimanded them for it, and on one or more occasions had inflicted corporal punishment upon them. He denied committing the offense, claiming the testimony against him was false. He testified to some improprieties between the prosecuting witness and her brother, but nothing of an incriminatory nature. But that was denied by Goldie Bartley and her brother. Appellant introduced as a witness Ella Adkins, a young girl who had played with the Bartley children, who testified to some indecent familiarity shown by the brother of Goldie Bartley towards his sister. There was testimony sustaining the good reputation of Goldie Bartley and other testimony impeaching the reputation of Ella Adkins. Goldie Bartley and her brother both flatly contradicted the testimony of the Adkins girl.

If the testimony of the stepdaughters was believed, the jury was warranted in finding the appellant guilty, but it is argued here that where it appears from all surrounding circumstances that the case is fabricated and does not bear the stamp of truth, it is not such evidence as will sustain a verdict. Appellant relies on Clark v. Young, 146 Ky. 377, 142 S. W. 1034, L. & N. v. Chambers,

165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471, and other cases of similar import. In those cases evidence is defined to mean something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carying the quality of proof, or having fitness to induce conviction. It has been decided also that when the statement of a witness is inherently impossible and absolutely at variance with universally accepted physical laws, it will not afford a scintilla of evidence to support a verdict. Compare L. & N. R. R. Co. v. Quinn, 187 Ky. 607, 219 S. W. 789. But this case is not governed by those authorities. The facts testified to by the witnesses here, while shocking and revolting, are not vague, or indefinite, or irrelevant or inherently impossible, or contrary to physical laws. Goldie Bartley testified to specific acts of the defendant, and is corroborated by her sister, who was present. Appellant admits that he was present on the occasion in question, and it was possible for the offense to have been committed.

While the testimony, if true, indicated a state of depravity astonishing to credulity, it would be an equally staggering burden on belief to assume that these young women deliberately fabricated this whole case against their stepfather.

The verdict at last depends on the credibility of the witnesses, which is peculiarly and exclusively a question for the jury. Haynes v. Commonwealth, 194 Ky. 469, 239 S. W. 780. This court will not disturb the verdict of a properly instructed jury unless it is flagrantly and palpably against the evidence. The jury are the judges of the credibility of witnesses, and unless a verdict is so flagrantly against the evidence as to shock the conscience and lead unerringly to the conclusion that it was the result, not of deliberation, but of passion and prejudice, it must stand. Kirk v. Commonwealth, 192 Ky. 460, 233 S. W. 1060; Wells & Isaac v. Commonwealth, 195 Ky. 740, 243 S. W. 1015.

Tested by these rules, which are abundantly established by the decided cases, the evidence in this case required that the issue of guilt or innocence should be submitted to the jury, and its verdict is not palpably against the evidence.

The appellant complains bitterly of the conduct of the commonwealth's attorney and refers to a number of instances in the record to show that the jury was preju-

diced thereby. In each of the eleven instances mentioned, the commonwealth's attorney merely asked a question to which an objection was sustained by the court. The first question was whether the prosecuting witness had told her mother about what had happened, and the next was whether the delay of three or four days to have her stepfather arrested, was caused by fear which prevented her doing so until he was confined in jail. The prosecuting witness answered that she did not know, apparently not understanding what was asked. The next instance is on cross-examination of the defendant, where the court sustained an objection as to how much the defendant had whipped the girl. Again on cross-examination, the appellant was asked whether he stayed up on the hill until about 1 o'clock before the girls came out. Appellant said the girls came home at 12 o'clock, whereas they testified that they came home at 3 o'clock. It seems to us that the cross-examination was pertinent, and the court might very well have permitted the question to be answered. Other questions on cross-examination are pointed out, but relate to details of the appellant's testimony and appear to us to have been proper cross-examination. When the Adkins girl was being cross-examined, the commonwealth's attorney asked her if she was not a girl of easy virtue, to which an objection was sustained, although the witness answered in the affirmative. The commonwealth's attorney then asked her if she was acquainted with her own general reputation for virtue. An objection was sustained, and the commonwealth's attorney, apparently thinking the question proper, but that he had framed it incorrectly, put it in a different form, asking her what was her own reputation for truth and veracity in the community in which she lived, from what people who knew her best said about her. The court again sustained the objection, and it was not repeated. There was testimony by other witnesses that the reputation of the Adkins girl was bad.

Appellant cites former cases in this court where the same commonwealth's attorney had brought criticism upon himself, but nothing appears in this record to bring this case within the rule or reasoning of those or to indicate any desire or effort on the part of the commonwealth's attorney to prejudice the jury or that it did so. The able counsel for appellant apparently realized that the record did not manifest any material misconduct of

. the official, for in the brief reference is made to his facial expressions, manner, and bearing, not shown by the record to emphasize the claim of error.

We cannot venture beyond the fair import of the written record and ascribe to it a significance it does not possess. Such matters, if true, cannot be exhibited in a record, and must be dealt with in the first instance by the trial court. The lower court sustained most of appellant's objections and carefully safeguarded his rights.

The duties and rights of an attorney for the commonwealth in conducting prosecutions have been frequently and fully defined by this court, and what has been said need not be repeated. It is readily available and easily accessible to all as may be seen from the following cases, and others therein cited, dealing with the subject: Housman v. Commonwealth, 128 Ky. 818, 110 S. W. 236, 33 Ky. Law Rep. 311; Lawler v. Commonwealth, 182 Ky. 185, 206 S. W. 306; Chappell v. Commonwealth, 200 Ky. 429, 255 S. W. 90; Rowe v. Commonwealth, 206 Ky. 803, 268 S. W. 573; Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 168; Little v. Commonwealth, 209 Ky. 263, 272 S. W. 724; Keeton v. Commonwealth, 108 S. W. 315, 32 Ky. Law Rep. 1164; Slaughter v. Commonwealth, 149 Ky. 5, 147 S. W. 751.

Nothing appears in this record, however, to show that the attorney for the commonwealth in this case went beyond his rights, as defined in these decisions. We have examined the record with care and reached the conclusion that appellant had a fair trial and that the verdict of the jury should not be disturbed.

Judgment affirmed.